# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3173

_____

Steven Demarais

*Plaintiff - Appellant*

v.

Gurstel Chargo, P.A.; RAzOR Capital, LLC

*Defendants - Appellees*

------------------------------

DBA International, Inc.

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 8, 2017
Filed: August 29, 2017

_____

Before BENTON, BEAM, and MURPHY, Circuit Judges.

_____

BENTON, Circuit Judge.

Steven Demarais alleges Gurstel Chargo, P.A., violated the Fair Debt Collection Practices Act (FDCPA) while collecting a consumer debt owned by RAzOR Capital, LLC. The district court dismissed Demarais's complaint. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

This court considers the facts alleged by Demarais. He incurred debt to Citibank, N.A. No later than 2010, Citibank charged off the debt. Following the charge off, no one sent him statements showing the accumulation of interest.

In June 2014, RAzOR—represented by law firm Gurstel Chargo—sued Demarais in a Minnesota state court. RAzOR, claiming to be the successor in interest to Citibank, said Demarais owed it $20,591.11 plus $5,030.21 in interest. According to Demarais, RAzOR sought post-charge-off interest that it had no right to collect.

Demarais did not timely answer RAzOR's state-court complaint. Gurstel Chargo did not move for default judgment. It instead allowed the court to set the case for an October 5, 2015, trial. When alleged debtors do not file answers, Gurstel Chargo often allows the cases to be set for trial rather than moving for default judgments. On the trial date, Gurstel Chargo appears without any client representatives, witnesses, or other evidence. Gurstel Chargo does this, Demarais says, to avoid a Minnesota statute about default judgments on consumer debts, Minn. Stat. § 548.101. Rather than seeking default judgments, Gurstel Chargo seeks judgments based on non-appearance at trial. If a consumer appears for trial, Gurstel Chargo either requests a continuance or dismisses the suit.

On October 5, Gurstel Chargo appeared for Demarais's scheduled trial and about 17 other consumer-debt trials. Gurstel Chargo had no client representative, witnesses, or other evidence. Demarais claims Gurstel Chargo assumed he would not

appear for trial, and its appearance for trial was an attempt to collect the post-charge-off interest. But Demarais did appear, with an attorney, prepared for trial. Gurstel Chargo asked for a continuance. The court reset the trial for January 4, 2016.

Demarais then served discovery requests on RAzOR. RAzOR did not timely respond. Demarais's attorney asked Gurstel Chargo about the responses. It asked for an extension, and Demarais's attorney agreed. Gurstel Chargo never responded to the discovery requests.

On January 4, Demarais appeared with his attorney, prepared for trial. Gurstel Chargo appeared, but was not prepared—again, no client representatives, no witnesses, and no evidence. Gurstel Chargo dismissed RAzOR's case against Demarais with prejudice. Gurstel Chargo also appeared for plaintiffs in two other trials that day. In one, it sought a judgment against the consumer-defendant based upon non-appearance at trial.

Demarais provides case numbers for six other cases where he alleges Gurstel Chargo obtained or is obtaining judgments despite appearing without the ability to introduce evidence. He also provides case numbers for seven cases where he alleges Gurstel Chargo appeared without supporting documentation and, when the court asked for it, requested a continuance and then ignored the case.

On January 22, 2016—eighteen days after dismissal—Gurstel Chargo served Demarais with interrogatories and document-and-admission requests bearing the caption and number of the dismissed case. The letter said it was a communication "from a debt collector and is an attempt to collect a debt." It said he was required to provide responses within 30 days. This was false, Demarais says, because the claim had been dismissed.

On February 5, 2016, Demarais sued Gurstel Chargo and RAzOR in federal district court, claiming they violated the FDCPA. (This court refers to the parties collectively as "Gurstel Chargo.") He alleged they violated 15 U.S.C. §§ 1692e and 1692f by falsely representing the amount of debt, falsely threatening to take action, using unfair means to attempt to collect debt, and attempting to collect debts not owed. Gurstel Chargo moved to dismiss. The district court dismissed, concluding any violation at the October 5 hearing was barred by the statute of limitations, Gurstel Chargo's statements in court were "permissible litigation tactics and not actionable false assertions," and the January 22 letter was not likely to deceive anyone. Demarais appeals.

## II.

Gurstel Chargo argues, for the first time on appeal, that Demarais lacks standing because he has not alleged he suffered a concrete injury in fact. To have standing, a "plaintiff must have . . . suffered an injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (internal quotation marks omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* Both tangible and intangible injuries can be concrete. *Id.* at 1549. At the motion to dismiss stage, "the standing inquiry must . . . be done in light of the factual allegations of the pleadings." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 570 (8th Cir. 2007), *citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Demarais says Gurstel Chargo's actions caused concrete injuries: (A) its January 22 letter—an attempt to collect a debt not owed in violation of § 1692f(1); and (B) its October 5 appearance and continuance request—an attempt to collect debt

-4-

not owed in violation of §§ 1692f(1) and 1692e(2), and an improper threat to take an action that it could not and did not intend to take in violation of § 1692e(5).

A.

Demarais does not allege any tangible harms from the January 22 letter. He alleges only that Gurstel Chargo sent him a letter stating it was "an attempt to collect a debt" and serving him with interrogatories, requests for production of documents, and requests for admissions. The discovery requests had the caption and number of the dismissed state case and said he was "required" to respond within 30 days. According to Demarais, this conduct violated § 1692f(1) because it was an attempt to collect a debt that was extinguished after Gurstel Chargo dismissed its state-court complaint with prejudice. *See Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 583 (Minn. 2010) ("Consequently, the judgment of dismissal with prejudice and on the merits was an adjudication that extinguished and discharged the right of the Dykes to bring claims against Superior in a subsequent lawsuit . . . ."). *See also Daewoo Elecs. Corp. of Am. v. W. Auto Supply Co.*, 975 F.2d 474, 478 (8th Cir. 1992) ("The dismissal extinguished Daewoo's underlying claim."). A debt collector violates § 1692f(1) when it sends a letter attempting to collect money not permitted by law. *Duffy v. Landberg*, 215 F.3d 871, 875 (8th Cir. 2000).

"[A] plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. The violation of the statute must cause a concrete injury. That concrete injury can be "the risk of real harm." *Id.* Where "the violation of a procedural right granted by statute" creates the risk of real harm, a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.*

-5-

With § 1692f(1), Congress identified a harm—being subjected to attempts to collect debts not owed. This "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* It is similar to the harm suffered by victims of the common-law torts of malicious prosecution, wrongful use of civil proceedings, and abuse of process. *See, e.g.*, ***Bertero v. Nat'l Gen. Corp.***, 529 P.2d 608, 614 (Cal. 1974) (in bank) ("The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings."); ***Carter v. Oster***, 112 S.W. 995, 999 (Mo. App. 1908) ("But there are torts of which mental distress is the proximate and natural result, and for which damages may be assessed. Such are malicious prosecutions . . . ."); ***Baglini v. Lauletta***, 768 A.2d 825, 839 (N.J. Super. Ct. App. Div. 2001) ("Courts have required little or no proof with regard to intangible damages for malicious use of process, apparently in the belief that a 'normal person' subjected to wrongful litigation would have suffered at least some damages."). *See also* **Restatement (Second) of Torts §§ 674, 681** (June 2017 update); Dan B. Dobbs et al., **The Law of Torts § 593** (2d ed. June 2017 update) ("According to most counts, a majority of American courts allow the plaintiff to pursue the wrongful civil litigation claim without showing any special kind of injury."). The harm of being subjected to baseless legal claims, creating the risk of mental distress, provides the basis for both § 1692f(1) claims and the common-law unjustifiable-litigation torts.

Congress recognized that abusive debt collection practices contribute to harms that can flow from mental distress, like "marital instability" and "the loss of jobs." **§ 1692(a)**. "[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is . . . instructive and important." ***Spokeo***, 136 S. Ct. at 1549. Congress created a statutory right to be free from attempts to collect debts not owed, helping to guard against identified harms.

This is not a situation where "[i]t is difficult to imagine how" the violation of a statutory right alone could cause concrete harm. *See **Spokeo***, 136 S. Ct. at 1550 ("dissemination of an incorrect zip code"); ***Braitberg v. Charter Commc'ns, Inc.***, 836 F.3d 925, 930 (8th Cir. 2016) ("the retention of information lawfully obtained, without further disclosure"). Demarais alleges Gurstel Chargo served him with discovery requests on an extinguished debt, falsely told him he had to respond to them, and told him it was attempting to collect a debt. These violations, directed at Demarais and tending to cause reasonable people mental distress, create the risk of real, concrete harms. *See **Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.***, 528 U.S. 167, 183 (2000) (diminishment of aesthetic value of river is an injury in fact); ***FEC v. Akins***, 524 U.S. 11, 21 (1998) (denial of information that would help plaintiffs evaluate candidates is a "concrete" injury); ***Havens Realty Corp. v. Coleman***, 455 U.S. 363, 374 (1982) (receipt of false housing information is an injury in fact). The alleged violations of Demarais's § 1692f(1) rights were concrete injuries in fact.

Gurstel Chargo says Demarais can prove no concrete injury from the January 22 letter because Demarais's counsel stipulated that the discovery requests were sent "directly" to counsel. Assuming without deciding that this court can consider an outside-the-pleadings stipulation at the motion-to-dismiss stage, the stipulation does not destroy standing. Gurstel Chargo served the discovery requests on Demarais by sending them to his counsel. *See* **Minn. R. Civ. P. 5.02(a)** ("Whenever under these rules service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by the court."). Representations made to a consumer's attorney "routinely come to the consumer's attention and may affect his or her defense of a collection claim"—even if not "made 'directly' to the consumer debtor." ***Hemmingsen v. Messerli & Kramer, P.A.***, 674 F.3d 814, 818 (8th Cir. 2012). In light of the similarities between Demarais's alleged harm and traditionally recognized harms, and

Congress's judgment that attempts to collect debts not owed cause real injuries, Demarais alleges the January 22 letter caused him a concrete injury in fact.

B.

Demarais alleges tangible harm from Gurstel Chargo's October 5 appearance and continuance request. Demarais alleges that Gurstel Chargo threatened to proceed to trial to win a judgment for money he does not owe. In response to the threat, Demarais obtained counsel, served discovery requests, prepared for trial, and appeared at trial. Gurstel Chargo caused these actions because, had Demarais not acted, it would have been able to obtain judgment for interest he did not owe.

Demarais alleges a concrete injury in fact. "For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017). He alleges that Gurstel Chargo's actions caused him to obtain an attorney and serve discovery requests, which ordinarily cost money. *See Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 576 (D.C. Cir. 2003) ("the funds necessarily expended to defend against the wrongful legal proceedings" can be "damages for 'loss of property'"). He also alleges spending time defending against the meritless suit, itself an injury. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 692 (7th Cir. 2015) (individuals alleging fraudulent credit-card charges suffered Article III injury—"the aggravation and loss of value of the time needed to set things straight"). *See also Wells v. Willow Lake Estates, Inc.*, 390 Fed. Appx. 956, 959 (11th Cir. 2010) (being "forced to spend time and money complying with [selectively-enforced] regulations . . . is an injury in fact."); *Sisley v. Sprint Commc'ns Co., L.P.*, 284 Fed. Appx. 463, 466 (9th Cir. 2008) ("We have recognized, at least in certain circumstances, that lost time and income spent dealing with wrongful conduct can constitute a cognizable injury in fact.").

Demarais also alleges Gurstel Chargo's October 5 conduct violated his §§ 1692f(1), 1692e(2), and 1692e(5) rights. As discussed, Gurstel Chargo's alleged invasion of Demarais's § 1692f(1) rights is a concrete injury in fact. The same is true of the alleged invasions of his § 1692e(2) and (5) rights. Gurstel Chargo's alleged false representation in court pleadings of the amount of Demarais's debt and its false threat to proceed to trial create the same risks of mental distress traditionally recognized in unjustifiable-litigation torts and that Congress judged sufficient for standing to sue. Demarais has alleged concrete injuries in fact and has standing to sue Gurstel Chargo.

## III.

An action brought under the FDCPA must be brought "within one year from the date on which the violation occurs." **15 U.S.C. § 1692k(d)**. The district court concluded this statute of limitations barred Demarais's claim that Gurstel Chargo's October 5 appearance and continuation request were an attempt to collect an interest not owed. This court reviews "de novo . . . whether a claim is barred by the statute of limitations." *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc).

As a threshold matter, Gurstel Chargo says Demarais's brief fails to challenge the district court's statute-of-limitations holding. To the contrary, Demarais's brief does so, at length.

By the plain language of § 1692k(d), the statute of limitations begins "from the date on which the violation occurs." The applicability of § 1692k(d) turns on when the alleged "violation" occurred. Demarais alleges "Gurstel Chargo's October 5, 2015 appearance was an attempt on behalf of RAzOR to obtain a judgment and thus collect the full amount demanded in the Complaint," including "post charge-of[f]

-9-

interest" he did not owe. Demarais alleges a violation occurred October 5, 2015. He sued four months after the alleged violation occurred.

The district court, relying on *Nutter v. Messerli & Kramer, P.A.*, 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007), said, "communications during the course of litigation that merely restate or relate back to assertions made in the complaint do not restart the limitations period." It concluded that since Demarais said the October 5 appearance was an attempt to collect the amount demanded in the complaint, its allegation "relate[d] back to the complaint and d[id] not start a new limitations period."

The district court erred. If a debt collector violates the FDCPA, an individual may sue to enforce FDCPA liability within one year of that violation. It does not matter that the debt collector's violation restates earlier assertions—if the plaintiff sues within one year of the violation, it is not barred by § 1692k(d). Each alleged violation of the FDCPA is "evaluate[d] . . . individually to determine whether any portion of" the "claim is not barred by the statute of limitations." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1188 (10th Cir. 2013). *Accord* *Solomon v. HSBC Mortg. Corp.*, 395 Fed. Appx. 494, 497 (10th Cir. 2010) ("The FDCPA's comprehensive scheme makes many debt-collecting maneuvers actionable. Thus, separate communications can create separate causes of action arising from collection of a single debt." (footnote omitted)); *id.* ("For statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis."); *Purnell v. Arrow Fin. Servs., LLC*, 303 Fed. Appx. 297, 301-02 & n.3 (6th Cir. 2008) (rejecting argument that "all the FDCPA claims were time barred because the violations *first* occurred outside the limitations period."). As the Tenth Circuit points out, "Any other rule would immunize debt collectors from later wrongdoing." *Solomon*, 395 Fed. Appx. at 497 n.3.

The district court referred to communications "relat[ing] back" to the complaint. *Cf.* **Fed. R. Civ. P. 15(c)** (applying "relation back" principle to

amendments to pleadings).  The district court should have focused on Demarais's allegation—on October 5, Gurstel Chargo attempted to collect interest he did not owe—and determined whether he plausibly alleged that Gurstel Chargo violated the FDCPA on that date.  If he did, his claim is not barred by the statute of limitations.

IV.

The FDCPA generally prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  **§ 1692e**.  It specifically prohibits the "threat to take any action . . . that is not intended to be taken."  **§ 1692e(5)**.  The district court determined that the acts Demarais said violated § 1692e—including Gurstel Chargo's request for a continuance—were "permissible litigation tactics and not actionable false assertions."  This court reviews the district court's dismissal de novo.  *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d at 1063.

The district court relied on *St. John v. CACH, LLC*, 822 F.3d 388 (7th Cir. 2016).  There, "the plaintiffs claimed that the debt collectors violated § 1692e(5) of the Act by initiating the state court proceedings with no intention of going to trial."  *St. John*, 822 F.3d at 389.  The Seventh Circuit gave two reasons for rejecting the § 1692e(5) claim.  First, the plaintiffs "failed to show that the defendants ever threatened to go to trial at all" because "the mere filing of a civil action does not include an implicit declaration that the plaintiff intends to advance the action all the way through trial."  *Id.* at 390-91.  Second, the plaintiffs failed to "sufficiently allege[] that the defendants did not intend to proceed to trial when they initially filed their collection complaints in state court."  *Id.* at 390.

Demarais asks this court to reject *St. John*.  He points out that this court has suggested that activity like that in *St. John* violates § 1692e: "a § 1692e complaint alleging that the defendant debt collector lawyer routinely files collection complaints

-11-

containing intentionally false assertions of the amount owed, serves the complaints on unrepresented consumers, and then dismisses any complaint that is not defaulted would raise . . . issues of abusive, deceptive, or unfair means of debt collection . . . ." *Hemmingsen*, 674 F.3d at 818. This court, however, need not decide whether *St. John* was correctly decided. Even if it were, Demarais has plausibly pled that Gurstel Chargo threatened to take an action it did not intend to take.

First, Demarais plausibly pled that Gurstel Chargo threatened to go to trial when it appeared for a scheduled trial, discovered Demarais was present with a lawyer, and requested the trial be continued. A communication to a debtor is a § 1692e(5) "threat" if an "unsophisticated consumer would likely be led to believe that" the debt collector would take an action. *Duffy*, 215 F.3d at 875. But while the "unsophisticated consumer" standard applies to communications with debtors, a "competent attorney" standard applies "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer." *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 574 (8th Cir. 2015). This court has not previously addressed which standard applies when, like here, a debt collector communicates something to a court, a debtor, and his attorney simultaneously. This court need not answer that question because Demarais pleads factual content allowing a reasonable inference that Gurstel Chargo's conduct would likely lead both an unsophisticated consumer and a competent attorney to believe it would proceed to trial. In Minnesota, a party "may not demand a continuance for the purpose of delay." *State v. Vance*, 254 N.W.2d 353, 358 (Minn. 1977). *See also* **Minn. Gen. R. Prac. 122**. Demarais plausibly alleges an unsophisticated consumer and a competent attorney would likely be led to believe that a party requesting a continuance on the day of trial intends to prove its case on the new trial date.

Gurstel Chargo contends that Demarais does not allege it "made affirmative representations" that it "definitively intended to try the collection case." But whether a statement is a threat turns on what it likely leads people to believe; it need not be

an "affirmative representation." *See **Duffy***, 215 F.3d at 875. And conditional statements can be threats. *See **id.*** at 873-74 (debt collector's letter stating that, "in the event the parties proceeded to litigation, it would seek ' . . . attorney's fees, and such other remedy as the court may grant'" was a § 1692e(5) threat)).

Second, Demarais plausibly pled that Gurstel Chargo did not intend to proceed to trial when requesting the continuance. He alleges that when Gurstel Chargo is forced to prove up a case, it requests additional time to provide proof and then ignores the case. He references seven case numbers supporting this allegation. He also alleges that Gurstel Chargo appeared for the October 5 trial date with no evidence, never responded to his discovery requests despite asking for an extension, and appeared for the January 4 trial date with no evidence. Demarais plausibly alleges that Gurstel Chargo had no way of proving its case against him and never intended to prove its case at trial.

Contrary to Gurstel Chargo's suggestion, finding Demarais plausibly pled a § 1692e(5) violation does not mean that every continuance request violates the FDCPA. Gurstel Chargo's potential liability flows from an alleged false threat to proceed to trial. If Gurstel Chargo did not falsely threaten to proceed to trial, it is not liable. Also contrary to Gurstel Chargo's suggestion, the fact that it used an ordinarily "permissible litigation tactic" does not insulate it from FDCPA liability. "The Act does apply to lawyers engaged in litigation." ***Heintz v. Jenkins***, 514 U.S. 291, 294 (1995). *See also **Hemmingsen***, 674 F.3d at 819 (explaining there are "diverse situations in which potential FDCPA claims may arise during the course of litigation"). True, this court must interpret the statute to "implement 'the statute's apparent objective of preserving creditors' judicial remedies.'" ***Id.*** at 818, *quoting* ***Heintz***, 514 U.S. at 296. Interpreting the FDCPA to prohibit debt collectors from falsely threatening to proceed to trial—coercing consumers and their attorneys to prepare for and appear at a trial that the debt collector did not intend to

pursue—preserves creditors' judicial remedies. *See id.* (indicating similar conduct would violate the FDCPA). Demarais plausibly pled a violation of § 1692e.[1]

V.

Demarais alleges Gurstel Chargo's January 22 letter violated § 1692f(1). The letter allegedly said it was a communication "from a debt collector and is an attempt to collect a debt," included discovery requests, and said Demarais was required to respond within 30 days. Section 1692f(1) specifically prohibits "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Letters attempting to collect money not permitted by law are "a violation of the plain language of section 1692f(1)." *Duffy*, 215 F.3d at 875. Demarais claims the letter was sent after Gurstel Chargo dismissed with prejudice its claims against him, and thus was "an attempt to collect a debt" not owed.

The district court dismissed Demarais's claim. It stated that the letter was sent to his attorney and not actionable because it was unlikely to deceive a competent attorney.[2] It also concluded, "Regardless of the statutory label, Demarais's

---

[1]Gurstel Chargo argues that imposing liability violates its First Amendment rights. Because it did not make this argument in the district court, this court declines to consider it. *See Wiser v. Wayne Farms*, 411 F.3d 923, 926 (8th Cir. 2005).

[2]The fact that the letter was sent to Demarais's attorney was not in his complaint; his attorney admitted that fact at oral argument in the district court. "Statements of counsel at oral argument raising new facts not alleged in the pleadings constitute 'matters outside the pleadings' and, if considered by the district court, require treatment of a Rule 12(b)(6) motion to dismiss as one for summary judgment." *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999). Since the district court considered the attorney's statements at oral argument, it should have treated Gurstel Chargo's motion to dismiss as a motion for summary

-14-

allegations are inadequate because they do not show that anyone was likely to be misled, deceived, or otherwise duped by the discovery requests."

The district court erred. A plaintiff need not allege someone was likely to be misled, deceived, or otherwise duped to plead a § 1692f(1) violation. This court begins "with a careful examination of the statutory text." ***Henson v. Santander Consumer USA Inc.***, 137 S. Ct. 1718, 1721 (2017). There is no "misled, deceived, or duped" requirement in the plain language of § 1692f(1). Section 1692f generally prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." Section 1692f(1) explains that "collection of any amount" not owed violates § 1692f. Neither of these sections has the terms "misled," "deceived," or "duped." Nor does a violation of these sections necessarily mislead, deceive, or dupe a consumer. A debt collector might "collect[] . . . any amount" not "expressly authorized by the agreement creating the debt or permitted by law," when it garnishes a consumer's wages despite having no judgment against her. *See, e.g.*, ***Scott v. Portfolio Recovery Assocs., LLC***, 139 F. Supp. 3d 956, 969-70 (S.D. Iowa 2015). *See also* ***Fox v. Citicorp Credit Servs., Inc.***, 15 F.3d 1507, 1517 (9th Cir. 1994) ("[A] jury could rationally find the filing of an application for a writ of garnishment when the Foxes were current in payments demanded by Citicorp agents to constitute an unfair or unconscionable means of collection or attempted collection of a debt under section 1692f."). An erroneous garnishment does not mislead a consumer; it deprives him or her of property in violation of the law.

---

judgment. **Fed. R. Civ. P. 12(d)** ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The district court's error, however, was harmless because—as discussed below—the competent attorney standard is inapplicable to Demarais's § 1692f(1) claim regardless of the nature of the motion.

Other specific § 1692f provisions are inconsistent with a "misled, deceived, or duped" requirement. Section 1692f(6)(A) prohibits "[t]aking . . . nonjudicial action to effect dispossession . . . of property" if the debt collector has "no present right to possession of the property." Violations of this prohibition generally do not mislead, deceive, or dupe consumers—they harm consumers by depriving them of property. Section 1692f(7) prohibits "[c]ommunicating with a consumer regarding a debt by post card." Violations of this provision generally do not mislead, deceive, or dupe consumers—they invade consumers' privacy by showing alleged debts to people viewing their mail. *See Joseph v. J.J. Mac Intyre Cos.*, 281 F. Supp. 2d 1156, 1163 (N.D. Cal. 2003).

Further, § 1692e specifically prohibits debt collectors from using any "false, *deceptive*, or *misleading* representation or means" (emphasis added). It is unlikely that Congress would expressly prohibit "deceptive" and "misleading" conduct in one section of a statute, and silently prohibit it in another. Where Congress places an express requirement in one part of a statute but leaves it out of another, courts should not "add[] that term" where it was "conspicuously absent." *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). By the same token, reading § 1692f to require "deceptive" or "misleading" conduct, would make § 1692f superfluous—any conduct violating § 1692f would necessarily also violate § 1692e's prohibition on "deceptive" or "misleading" conduct. That reading is strongly disfavored, especially where, as here, Congress passed both § 1692e and § 1692f in the same statute. *See Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1177 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). The district court's determination that Demarais must show a likelihood of being misled, deceived, or duped "[r]egardless of the statutory label" contradicts the statute.

This court's cases interpreting § 1692f do not impose a "misled, deceived, or duped" requirement. In *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567 (8th Cir.

2015), the plaintiffs alleged that a debt collector's discovery requests "confuse and mislead the unsophisticated consumer as to his or her rights in answering said discovery"—a § 1692e claim. *Powers*, 776 F.3d at 573-75. In this context, this court said that "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." *Id.* at 574, *quoting **Evory v. RJM Acquisitions Funding L.L.C.***, 505 F.3d 769, 775 (7th Cir. 2007). *See also **Evory***, 505 F.3d at 774-75 (discussing a situation where "communication to the lawyer is alleged to be *deceptive*" (emphasis in original)). Similarly, in *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 (8th Cir. 2012), this court said no one "was misled, deceived, or otherwise duped" in the context of finding a plaintiff failed to "prove that . . . assertions were false or misleading for purposes of § 1692e." ***Hemmingsen***, 674 F.3d at 819. And in *Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435 (8th Cir. 2015), this court held that a plaintiff did not state a generic § 1692f claim when he alleged that a debt collector-attorney filed an affidavit without personal knowledge of the facts stated: "Absent an allegation that he actually did not owe rent, Janson has not plausibly alleged that the defendant's practice misled the state court in any meaningful way." ***Janson***, 806 F.3d at 438. But that just means an attorney does not violate § 1692f by providing truthful, non-misleading information to a court—not that deception is a requirement of § 1692f.

Gurstel Chargo asserts that the Supreme Court's recent decision in *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017), supports the district court's "misled, deceived, or duped" requirement for § 1692f(1) claims. In *Midland Funding*, the Court considered whether a debt collector violates § 1692e or § 1692f by filing a proof of claim for a time-barred debt in a Chapter 13 bankruptcy. Evaluating the § 1692e claim, the Court said determining "whether a statement is misleading normally requires consideration of the legal sophistication of its audience." ***Midland Funding***, 137 S. Ct. at 1413 (internal quotation marks omitted). Separately evaluating the § 1692f claim, the Court noted that, compared to a debt

collector's civil suit, the "features of a Chapter 13 bankruptcy proceeding make it considerably more likely that an effort to collect upon a stale claim in bankruptcy will be met with resistance, objection, and disallowance." *Id.* at 1413-14.  It also noted that untimeliness is an affirmative defense in bankruptcy, and finding § 1692f applicable would effectively shift the burden of investigating staleness to the debt collector.  *Id.* at 1414-15.  Neither of the Court's § 1692f considerations apply to Gurstel Chargo's alleged attempt to collect an *extinguished* debt in a *civil* suit.  And neither indicates that the specific subsection at issue here—§ 1692f(1)—requires proof someone was likely to be "misled, deceived, or duped."

Gurstel Chargo argues the district court's "misled, deceived, or duped" conclusion was a finding that the letter's misrepresentations were not material and therefore not actionable.  The Supreme Court has reserved the question whether an FDCPA plaintiff must show materiality to prove a § 1692e claim.  *See Sheriff v. Gillie*, 136 S. Ct. 1594, 1602 n.6 (2016).  This court has not directly addressed whether materiality is required, although it once indicated—in discussing class certification—that materiality would be an issue in proving a § 1692f(1) claim.  *See Powers*, 776 F.3d at 571.  Assuming materiality is required, an attempt to collect a debt not owed is a material violation of § 1692f(1).  As this court held in *Duffy*, a debt collector's "letters seeking" debts not owed are "an attempt to collect interest not permitted by law, and therefore a violation of the plain language of section 1692f(1)." *Duffy*, 215 F.3d at 875.  *Duffy* did not evaluate whether anyone was likely to be misled by the letters' overstated interest amounts; it considered whether they attempted to collect interest not owed. *Id.  Accord Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 269-70 (3d Cir. 2013) ("[T]he 'competent attorney' standard d[oes] not apply to the debtor's § 1692f(1) claim because the only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law.  This inquiry d[oes] not turn on the reader's sophistication." (internal quotation marks and citation omitted)).

Gurstel Chargo's argument for a "misled, deceived, or duped" requirement narrowly reads the FDCPA as prohibiting only debt-collection activities that mislead consumers into paying debts not owed. But the FDCPA, by its terms, guards against many other harms—the mental distress that can cause "marital instability" and "the loss of jobs," as well as "invasions of individual privacy." **§ 1692(a)**. *See also* ***Henson v. Santander Consumer USA Inc.***, 137 S. Ct. 1718, 1720 (2017) ("Disruptive dinnertime calls, downright deceit, and more besides drew Congress's eye to the debt collection industry."). The attempted collection of debts not owed harms consumers not just by inducing the payment of false claims. It also forces consumers to spend time and money addressing the false claims—even if they know they do not actually owe the claimed debt. Being subjected to attempts to collect debts one knows he or she does not owe can disrupt marriages, impair performance on the job, and cause public embarrassment—the very harms motivating Congress to pass the FDCPA. The district court erred in dismissing Demarais's claim that Gurstel Chargo's January 22 letter and discovery requests violated § 1692f(1).

\* \* \* \* \* \* \*

The judgment of the district court is reversed, and the case remanded for proceedings consistent with this opinion.

BEAM, Circuit Judge, concurs in the judgment.

_____